## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## NORTHERN DIVISION

| | | |
|---|---|---|
| JERMAINE CORTEZ PATE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:22-cv-00050-NAB |
| | ) | |
| ANNE L. PRECYTHE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion of plaintiff Jermaine Cortez Pate for leave to commence this civil action without prepayment of the required filing fee. (Docket No. 5). Having reviewed the motion and the financial information submitted in support, the Court has determined that plaintiff lacks sufficient funds to pay the entire filing fee, and will assess an initial partial filing fee of $39.31. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will dismiss this action without prejudice.

## 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly

payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id*.

In support of his motion for leave to proceed in forma pauperis, plaintiff has submitted a copy of his inmate account statement. The account statement shows an average monthly deposit of $196.54. The Court will therefore assess an initial partial filing fee of $39.31, which is 20 percent of plaintiff's average monthly deposit.

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should

2

construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

### The Complaint

Plaintiff is a self-represented litigant who is currently incarcerated at the Moberly Correctional Center in Moberly, Missouri. He has filed a civil action titled "Complaint Alleging Commerce and Antitrust Regulations Violations Pursuant to 28 U.S.C.S. § 1337."[1] The complaint contains allegations pursuant to the Sherman Act, the Clayton Act, the Foreign Trade Antitrust Improvement Act, and 42 U.S.C. § 1983. Plaintiff names Missouri Department of Corrections Director Anne L. Precythe as the sole defendant. (Docket No. 1 at 1). She is sued in both her official and individual capacities. In the complaint, plaintiff lists six claims for relief:

> 1. Constraints on trade and conspiracy to constrain trade under Section 1 of the Sherman Act;
> 2. Attempted and/or actual monopolization/conspiracy to monopolize under Section 2 of the Sherman Act;
> 3. Exclusive dealings under Section 3 of the Clayton Act;
> 4. A violation of Section 14 of the Clayton Act;
> 5. A violation of the Foreign Trade Anti-Trust Improvement Act…; and

---

[1] Under 28 U.S.C. § 1337, "[t]he district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies." 28 U.S.C. § 1337(a).

3

      6. Illegal collection and assessment of state taxes by an organization
operating as a non-profit trust.

(Docket No. 1 at 2).

To support these claims, plaintiff presents his "Statement of Facts," in which he asserts that defendant "operates a non-profit canteen organization[,] which was established" pursuant to RSMo § 217.195.[2] He suggests this constitutes a "Mercantile Monopoly" that "currently excludes competition in a relevant market and continues to control prices without regard to the financial status of the consumers." Plaintiff accuses defendant of excluding "all other available options and vendors from participating in the venture of providing goods to incarcerated people." He contends that defendant has not "acquired or maintained the monopoly power as a result of a superior product, business acumen, or historical accident." As such, plaintiff concludes that defendant has been deliberately indifferent "towards the consumers," thereby violating their Eighth Amendment "right to be free from cruel and unusual punishment." In particular, plaintiff alleges a failure "to maintain a constant supply of basic hygiene."

Plaintiff also notes that defendant "provides goods produced and manufactured by offenders through the Missouri Vocational Enterprise" program. He alleges that these products are being sold in "violation of the Missouri sales and use tax laws," because they are "being illegally taxed by the defendant to the consumers." (Docket No. 1 at 3).

Following his "Statement of Facts," plaintiff sets forth an argument as to why the Court should grant him preliminary injunctive relief. Much of this argument consists of the recitation of

---

[2] Mo. Rev. Stat. § 217.195 provides for the establishment of an inmate canteen fund. It states that: "With the approval of the director of the department of corrections, the chief administrative officer of any correctional center operated by the division may establish and operate a canteen or commissary for the use and benefit of the offenders." The statute also establishes an "Inmate Canteen Fund" in the state treasury, consisting "of funds received from the operation of the inmate canteens," which is to be used to improve offender services related to recreation, religion, education, or reentry.

case law. In the "Direct Injury" section, though, plaintiff states that he should be allowed "to purchase legal material as well as hygienic supplies from" a vendor "approved" by the "Federal Bureau of Prisons." (Docket No. 1 at 4). He asserts that he receives only "$8.50 per month as a form of public assistance," and that "defendant is currently partaking in a form of market manipulation" by "continuously fixing prices since her designation as the Director of the Missouri Department of Corrections."

By way of a "price fixing" example, plaintiff states that toothbrushes "were previously available [for sale] to the offender population" at $0.54. However, toothbrushes are currently being sold for $2.58. Plaintiff asserts that the "toothbrushes currently being sold are a generic brand and are being bought in bulk, costing defendant" somewhere between $0.10 and $0.50 per unit. He contends that this amounts to a price-fixing conspiracy that has resulted in the fixing of "arbitrary and unreasonable prices." (Docket No. 1 at 5).

With regard to his antitrust claims, plaintiff expressly asserts a violation of 15 U.S.C. § 2. (Docket No. 1 at 6). Reciting the language of that statute, he broadly alleges that "defendant possesses monopoly power in the relevant market and willfully acquired or maintained such power as opposed to gaining it as a result of a superior product, business acumen, or historical accident." According to plaintiff, "defendant has excluded all other competition and has fixed prices … to the detriment and with disregard of the offenders affected by the illegalities." As such, he insists that defendant has "market power" and "monopoly power" that allows her to control prices and exclude competitors. Plaintiff further states that he has requested the "opportunity to purchase items from an approved vendor" but has been denied, subjecting him "to financial hardships." He claims that defendant has abused "her monopoly power" and has acted unreasonably, breaching her fiduciary duty "to the Inmate Canteen Account Trust operation."

Plaintiff also alleges that defendant has attempted to create a monopoly under 15 U.S.C. § 2. He argues that defendant "(1) specifically intends to control prices and/or destroy competition in some part of commerce pertaining to goods sold to offenders in the prison system," and "(2) engaged in predatory or anticompetitive conduct directed to accomplishing the unlawful purpose." Plaintiff states that defendant has disregarded "the financial status of the consumers, and has no intention of increasing the amount of public assistance which is provided to the offender population." He asserts that defendant's disregard has resulted "in a dangerous probability of success" in creating a monopoly, and that defendant's "specific intent can be shown through inference, and relies solely upon the responses given through the exhaustion of administrative procedure."

Attached to the complaint are six separate exhibits relating to plaintiff's exhaustion of his administrative remedies. The Court has reviewed these exhibits and will treat them as part of the pleadings.[3]

First, there is an informal resolution request (IRR) submitted by plaintiff, in which plaintiff complains of the Moberly Correctional Center canteen having a constant "shortage of basic [hygiene] items," such as toothbrushes. (Docket No. 1-1 at 1). According to plaintiff, these shortages render the canteen "unreliable as it cannot maintain necessary provisions for offenders." He therefore requests to order hygiene items from an "outside vendor or an additional source."

---

[3] *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes"). *See also Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) (stating that "while ordinarily, only the facts alleged in the complaint are considered in determining whether it states a claim, materials attached to the complaint as exhibits may be considered in construing the sufficiency of the complaint"); and *Pratt v. Corrections Corp. of America*, 124 Fed. Appx. 465, 466 (8th Cir. 2005) (explaining that "the district court was required to consider the allegations not only in [plaintiff's] pro se complaint, but also in his motion to amend, his response to defendants' motion to dismiss, and the attachments to those pleadings").

Second, there is an IRR response indicating that pursuant to prison regulations, all items must be ordered through the canteen. (Docket No. 1-1 at 2).

Third, there is a copy of plaintiff's offender grievance, in which he again states that the "canteen lacks the ability to maintain adequate amounts of essential [hygiene] items resulting in an 8th Amendment violation." (Docket No. 1-1 at 3). He further states that "supply shortages" caused by the COVID-19 pandemic have created "a desperate need by this governmental department to install a contingency option for the offender population."

Fourth, there is a copy of the "warden's response" to plaintiff's grievance, which states that inmates are allowed to "request and obtain needed basic hygiene items," and that the canteen is available for "supplementary items … beyond the basic hygiene items." (Docket No. 1-1 at 6). The response also states that COVID has had worldwide effects "on the manufacturing industry," but that staff work diligently "to keep products available" in the canteen.

Fifth, there is a copy of plaintiff's offender grievance appeal, in which plaintiff asserts there are inadequate supplies in the canteen. (Docket No. 1-1 at 7). He also accuses the "MCC Mercantile" of "currently participating in unlawful business practices concerning buying its product in bulk," which allows it to purchase items at a discount. However, the canteen then purportedly sells the product "at a +100% up to +200% increase." As an example, plaintiff points to the sale of toothbrushes for $2.58, which are allegedly purchased in bulk for "around" $0.10 to $0.50.

Finally, plaintiff has attached a grievance appeal response. (Docket No. 1-1 at 6). The appeal response simply notes that his original complaint was adequately addressed, and that he has not provided any further evidence to support his claim.

7

There is no indication as to how plaintiff has actually been injured. Based on these facts, plaintiff requests a preliminary injunction "to purchase goods from an approved vendor"; an investigation by the Department of Justice and the Missouri Attorney General's Office; penalties under 15 U.S.C. § 1 and 15 U.S.C. § 2; unspecified "compensation in the form of punitive damages, actual damages and/or exemplary damages"; and a writ of mandamus ordering Judge James Cooksey of the Circuit Court of Randolph County to issues summons in his Small Claims Court case. (Docket No. 1 at 7).

## Discussion

Plaintiff is a self-represented litigant who has filed this civil action pursuant to various antitrust statutes and 42 U.S.C. § 1983. His chief contention is that the canteen at the Moberly Correctional Center is operated as an unlawful monopoly, and that defendant – as the Director of the Missouri Department of Corrections – is responsible. Because he is proceeding in forma pauperis, the Court has reviewed plaintiff's complaint under 28 U.S.C. § 1915. Based on that review, and for the reasons discussed below, the Court will dismiss this action without prejudice.

### A.  Antitrust Claims

Plaintiff has presented claims under Section 1 and 2 of the Sherman Act, Section 3 of the Clayton Act, and the Foreign Trade Antitrust Improvement Act. None of the few, broadly worded facts in the complaint, however, support a claim under any of these statutes.

### i.  Section 1 of the Sherman Act

Section 1 of the Sherman Act "prohibits every contract, combination, or conspiracy … in restraint of trade." *Faulk v. City of St. Louis, Mo.*, 30 F.4th 739, 748 (8th Cir. 2022). "The crucial question" regarding a Section 1 violation "is whether the challenged anticompetitive conduct stems from [an] independent decision or from an agreement, tacit or express." *Park Irmat Drug Corp. v.*

*Express Scripts Holding Co.*, 911 F.3d 505, 516 (8th Cir. 2018). By its very terms, 15 U.S.C. § 1 "requires concerted action to establish a violation." *Robbins v. Becker*, 794 F.3d 988, 997 (8th Cir. 2015). Thus, to prevail on a Sherman Act conspiracy claim, a plaintiff "must prove the conspirators had a unity of purpose or a common design and understanding, or a meeting of the minds to engage in prohibited conduct." *Id*. In other words, to state a claim under 15 U.S.C. § 1, a plaintiff "must allege specific facts plausibly suggesting … agreement in restraint of trade." *Ginsburg v. InBev NV/SA*, 623 F.3d 1229, 1233 (8th Cir. 2010).

In this case, plaintiff does not allege that defendant Precythe entered into an agreement to restrain trade. Indeed, there is no indication of any agreement whatsoever, among anyone, for any reason. Defendant Precythe is the only party identified in the complaint. No other person or entity is mentioned, making any inference of an agreement impossible. That is, there can be no conspiracy or meeting of the minds with only one person. Even if another party had been named, there is not a single fact alleged demonstrating that defendant Precythe – the head of the Missouri prison system – took any action with an anticompetitive purpose. Therefore, plaintiff has failed to state a claim under Section 1 of the Sherman Act, and the claim must be dismissed.

### ii.  Section 2 of the Sherman Act

"Section 2 of the Sherman Act prohibits monopolizing, or attempting to monopolize any part of the trade or commerce among the several states." *Inline Packaging, LLC v. Graphic Packaging Int'l, LLC*, 962 F.3d 1015, 1024 (8th Cir. 2020). *See also* 15 U.S.C. § 2. To succeed on a Section 2 monopolization claim under the Sherman Act, a plaintiff must demonstrate that defendant "(1) possessed monopoly power in the relevant market and (2) willfully acquired or maintained that power as opposed to gaining that power as a result of a superior product, business

acumen, or historical accident." *Amerinet, Inc. v. Xerox Corp.*, 972 F.2d 1483, 1490 (8th Cir. 1992).

For "an attempted monopolization claim under the Sherman Act, a plaintiff must prove (1) a specific intent by the defendant to control prices or destroy competition; (2) predatory or anticompetitive conduct undertaken by the defendant directed to accomplishing the unlawful purpose; and (3) a dangerous probability of success." *Trone Health Servs., Inc. v. Express Scripts Holding Co.*, 974 F.3d 845, 857 (8th Cir. 2020). The determination of "a dangerous probability of success" is made "by reference to the offender's share of the relevant market." *Id.*

In order to make a prima facie claim for monopolization under the Sherman Act, a plaintiff must "show that the defendant possessed monopoly power in the relevant market and willfully acquired or maintained that power." *HDC Medical, Inc. v. Minntech Corp.*, 474 F.3d 543, 547 (8th Cir. 2007). To establish the market power required for monopolization, the plaintiff has to demonstrate that the defendant has "a dominant market share in a well-defined relevant market." *Flegel v. Christian Hosp., Northeast-Northwest*, 4 F.3d 682, 689 (8th Cir. 1993). The relevant market is defined by both the product market and the geographic market. *Alexander v. National Farmers Org.*, 687 F.2d 1173, 1181 (8th Cir. 1982). The plaintiff has the "burden of establishing that a specified area constitutes a relevant geographic market in a particular case." *Morgenstern v. Wilson*, 29 F.3d 1291, 1296 (8th Cir. 1994).

Here, plaintiff has not presented any facts regarding "a well-defined relevant market," which is a prerequisite for a Sherman Act monopolization or attempted monopolization claim. That is, his allegations do not define either the product market or the geographic market. At most, plaintiff repeats the statutory language found in 15 U.S.C. § 2, but simply reciting a cause of action is insufficient to state a claim. *See Neubauer v. FedEx Corp.*, 849 F.3d 400, 404 (8th Cir. 2017)

("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do"); and *Hamilton v. Palm*, 621 F.3d 816, 817-18 (8th Cir. 2010) ("A pleading that merely pleads labels and conclusions, or a formulaic recitation of the elements of a cause of action, or naked assertions devoid of factual enhancement will not suffice").

The Court further notes that plaintiff's facts broadly assert "price fixing" at his correctional institution, specifically the price of a toothbrush, which he believes is too high. This assertion, however, does not satisfy any of the above-discussed elements of a monopolization or attempted monopolization claim. *See Johnson v. South Dakota*, 4:17-CV-4026-LLP, 2017 WL 1967362, at *2 (D.S.D. May 10, 2017) (determining that inmate failed to state claim under the Sherman Act as he presented no facts regarding a prison food provider's "market share or any allegations concerning the relevant market," and noting that the food provider's "market" was not the prison itself). Therefore, plaintiff has failed to state a claim under Section 2 of the Sherman Act, and the claim must be dismissed.

### iii.  Section 3 of the Clayton Act[4]

The purpose of the Clayton Act is "[t]o amend, supplement and strengthen the Sherman Act against monopolistic business practices." *See Allen Bradley Co. v. Local Union No. 3, Int'l. Bhd. of Elec. Workers*, 325 U.S. 797, 803 (1945). Relevant here, Section 3 of the Clayton Act – codified at 15 U.S.C. § 14 – "proscribes sales made on the condition that the buyer not use or deal in competing products." *Famous Brands, Inc. v. David Sherman Corp.*, 814 F.2d 517, 524 (8th Cir. 1987). *See also Standard Oil Co. of Cal. v. United States*, 337 U.S. 293, 300 (1949) ("Section 3 [of the Clayton Act] condemns sales or agreements where the effect of such sale or contract of

---

[4] The Court notes that in listing his "Claims for Relief," plaintiff refers to "[e]xclusive dealings under Section 3 of the Clayton Act," and "[a] violation of Section 14 of the Clayton Act." Section 3 of the Clayton Act is codified at 15 U.S.C. § 14, and it appears that both references to the Clayton Act rely on this same provision.

11

sale may be to substantially lessen competition or tend to create monopoly"); and *St. Francis Med. Ctr. v. C.R. Bard, Inc.*, 657 F.Supp.2d 1069, 1104 (E.D. Mo. 2009) (explaining that "Section 3 of the Clayton Act prohibits companies from making exclusive agreements that prevents buyers from dealing in the goods of a competitor where the effect of the agreements may be to substantially lessen competition or tend to create a monopoly").

A "controlling factor in" a claim under Section 3 of the Clayton Act is "the relevant competitive market area." *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 329 (1961). Indeed, a "threshold requirement" of an antitrust claim is the determination of the relevant market, which plaintiff "has the burden of identifying." *Southeast Mo. Hosp. v. C.R. Bard, Inc.*, 642 F.3d 608, 613 (8th Cir. 2011). Without a well-defined relevant market – consisting of both a product market and a geographic market – "a court cannot determine the effect that an allegedly illegal act has on competition." *Little Rock Cardiology Clinic PA v. Baptist Health*, 591 F.3d 591, 596 (8th Cir. 2009).

In addition, Section 3 of the Clayton Act "requires proof that a buyer acquiesced in … an arrangement" involving a sale made on condition that the "buyer not use or deal in competing products." *Famous Brands, Inc.*, 814 F.2d at 524 (determining the Clayton Act had not been violated because plaintiff provided no evidence to show it had to "deal exclusively in [defendant's] products").

Here, as with the Sherman Act claim, plaintiff has not presented any facts regarding "the relevant competitive market area." More specifically, aside from a complaint about the price of a toothbrush, he makes no effort to describe the product market. Further, none of his facts describe a geographic market either. Rather, plaintiff alludes only to the situation at the Moberly

Correctional Center. Thus, the Court "cannot determine the effect that an allegedly illegal act has on competition."

Plaintiff has also failed to present any facts showing that an "illegal act" occurred, much less that defendant Precythe is responsible. This is because there are no facts alleged establishing "that a buyer acquiesced in … an arrangement" involving a sale made on condition that the "buyer not use or deal in competing products." Plaintiff does not explain whether defendant Precythe is the buyer or seller in his scenario, but either way, he has failed to allege a single fact showing that Precythe took any action to enter into an exclusive arrangement that might "substantially lessen competition or tend to create monopoly." Therefore, plaintiff has failed to state a claim under Section 3 of the Clayton Act, and the claim must be dismissed.

### iv.  Foreign Trade Antitrust Improvement Act

The Foreign Trade Antitrust Improvement Act ("FTAIA") "excludes from the Sherman Act's reach much anticompetitive conduct that causes only foreign injury." *In re Monosodium Glutamate Antitrust Litig.*, 477 F.3d 535, 537 (8th Cir. 2007). It provides "that the Sherman Act shall not apply to conduct involving trade or commerce (other than import trade or import commerce) with foreign nations." *F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 162 (2004). *See also* 15 U.S.C. § 6a (providing that §§ 1 to 7 of Title 15 "shall not apply to conduct involving trade or commerce … with foreign nations").

The FTAIA provides an exception to the Sherman Act for certain commercial conduct involving foreign nations. As foreign nations are not mentioned anywhere in plaintiff's complaint, the statute's relevance is unclear. Plaintiff has not made any showing that he is entitled to relief under this statute. Therefore, this claim must be dismissed.

**B.  Constitutional Claims Under 42 U.S.C. § 1983**

The majority of plaintiff's complaint is devoted to his antitrust claims. He also references

violations of the Eighth Amendment, claims properly brought pursuant to 42 U.S.C. § 1983. *See*

*Johnson v. Douglas Cnty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013) ("The purpose of [42

U.S.C.] § 1983 is to deter state actors from using the badge of their authority to deprive individuals

of their federally guaranteed rights and to provide relief to victims if such deterrence fails").

**i.  Official Capacity Claim Against Defendant Precythe**

Plaintiff has sued defendant Precythe in her official capacity. In an official capacity claim

against an individual, the claim is actually "against the governmental entity itself." *See White v.*

*Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or

her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine*

*Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th

Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as

a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016)

(stating that a "plaintiff who sues public employees in their official, rather than individual,

capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th

Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit

against the entity for which the official is an agent").

In this case, defendant Precythe is alleged to be the Director of the Missouri Department

of Corrections, meaning she is an employee of the State of Missouri. As such, the official capacity

claim against her is actually a claim against the state itself, her employer.

To the extent that plaintiff is seeking money damages, his official capacity claim is barred

by the doctrine of sovereign immunity. "Sovereign immunity is the privilege of the sovereign not

14

to be sued without its consent." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011). The Eleventh Amendment has been held to confer sovereign immunity on an un-consenting state from lawsuits brought in federal court by a state's own citizens or the citizens of another state. *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). *See also Webb v. City of Maplewood*, 889 F.3d 483, 485 (8th Cir. 2018) ("The Eleventh Amendment protects States and their arms and instrumentalities from suit in federal court"); and *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618-19 (8th Cir. 1995) ("Generally, in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment"). "A claim for damages against a state employee in his [or her] official capacity is barred under the Eleventh Amendment." *Andrus ex rel. Andrus v. Ark.*, 197 F.3d 953, 955 (8th Cir. 1999).

There are two "well-established exceptions" to the sovereign immunity provided by the Eleventh Amendment. *Barnes v. State of Missouri*, 960 F.2d 63, 64 (8th Cir. 1992). "The first exception to Eleventh Amendment immunity is where Congress has statutorily abrogated such immunity by clear and unmistakable language." *Id*. The second exception is when a state waives its immunity to suit in federal court. *Id*. at 65. A state will be found to have waived its immunity "only where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 473 (1987). Neither exception is applicable in this case.

The first exception is inapplicable because the Supreme Court has determined that 42 U.S.C. § 1983 – under which this claim arises – does not revoke a state's Eleventh Amendment immunity from suit in federal court. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989) ("We cannot conclude that § 1983 was intended to disregard the well-established immunity of a

State from being sued without its consent"); and *Quern v. Jordan*, 440 U.S. 332, 341 (1979) ("[W]e simply are unwilling to believe…that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States"). The second exception does not apply because the State of Missouri has not waived its immunity in this type of case. *See* Mo. Rev. Stat. § 537.600 (explaining that sovereign immunity is "in effect," and providing exceptions relating to the "negligent acts or omissions by public employees arising out of the operation of motor vehicles…within the course of their employment," and regarding "[i]njuries caused by the condition of a public entity's property").

Here, sovereign immunity prevents an official capacity claim against a state employee for monetary damages. Furthermore, no exception to sovereign immunity is apparent in this case. Therefore, to the extent that plaintiff is seeking monetary damages against defendant Precythe in her official capacity, the claim must be dismissed.

To the extent that plaintiff is seeking prospective injunctive relief, he has not demonstrated the liability of the State of Missouri. Such liability may attach if a constitutional violation resulted from (1) an official policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise. *See Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *See Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). However, at a minimum, the complaint must allege facts supporting the proposition that an unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003). In this case, plaintiff has not presented any facts supporting the

proposition that the State of Missouri harmed him due to an unconstitutional policy, custom, or failure to train.

First, with regard to policy, plaintiff points to no "policy statement, ordinance, regulation, or decision officially adopted and promulgated by the [governmental entity's] governing body" as being at issue in this case. *See Angarita v. St. Louis Cnty.*, 981 F.2d 1537, 1546 (8th Cir. 1992). Certainly, he has not alleged any facts showing that the State of Missouri harmed him due to "a deliberate choice of a guiding principle or procedure made by the [governmental] official who has final authority regarding such matters." *See Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). Instead of presenting facts regarding an unconstitutional policy, plaintiff relies on vague allegations of "price fixing" in the canteen, without any demonstration of a constitutional dimension.

Second, as to custom, plaintiff has not demonstrated the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by" State of Missouri employees, much less that policymaking officials were deliberately indifferent to or tacitly authorized such indifference. *See Johnson*, 725 F.3d at 828. Indeed, plaintiff has not established a single constitutional violation, let alone a series of violations sufficient to constitute a pattern.

Third, and similarly, plaintiff has not shown that the State of Missouri was deliberately indifferent in failing to train or supervise its employees. To show deliberate indifference, a plaintiff must prove that the state "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *See Jennings v. Wentzville R-IV Sch. Dist.*, 397 F.3d 1118, 1122 (8th Cir. 2005). Ordinarily, this is done by a plaintiff alleging a "pattern of similar constitutional violations by untrained employees." *See S.M. v. Lincoln Cnty.*, 874 F.3d 581, 585 (8th Cir. 2017). As noted above, no such pattern is in evidence here.

17

For all these reasons, plaintiff has not adequately alleged the liability of the State of Missouri. As such, to the extent that plaintiff is seeking prospective injunctive relief against defendant Precythe in her official capacity, the claim must be dismissed.

### ii.  Individual Capacity Claim Against Defendant Precythe

Plaintiff has also sued defendant Precythe in her individual capacity. Individual liability in a 42 U.S.C. § 1983 case is personal. *See Frederick v. Motsinger*, 873 F.3d 641, 646 (8th Cir. 2017). In other words, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). As such, § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (quoting *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990)). *See also Kohl v. Casson*, 5 F.3d 1141, 1149 (8th Cir. 1993) (dismissing plaintiff's excessive bail claims because none of the defendants set plaintiff's bail, and therefore, "there can be no causal connection between any action on the part of the defendants and any alleged deprivation" of plaintiff's rights). To that end, a plaintiff must allege facts connecting the defendant to the challenged action. *See Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019).

In this case, plaintiff has not established a causal connection between any action on the part of defendant Precythe and the violation of one of his constitutional rights. With regard to a constitutional violation, plaintiff does nothing more than mention the Eighth Amendment, without presenting any facts showing that he has suffered an Eighth Amendment violation. As to Precythe herself, he has not attributed any actions to her at all, let alone alleged facts sufficient to demonstrate that her actions violated his constitutional rights.

To the extent that Precythe appears in the complaint, it is in reference to her position as Director of the Missouri Department of Corrections. Precythe's position of authority, however, is

not sufficient – without more – to establish her personal responsibility. *See Reynolds v. Dormire*, 636 F.3d 976, 981 (8th Cir. 2011) (explaining that it is settled "that a warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement"); and *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) ("[A] general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability").

For these reasons, plaintiff has not stated a 42 U.S.C. § 1983 claim against defendant Precythe in her individual capacity. Thus, such claim must be dismissed.

### iii.  Illegal Collection of State Taxes

Plaintiff alleges that defendant Precythe has illegally assessed and collected state taxes. He further appears to complain about high prices in the commissary. Neither allegation implicates a constitutional right. *See Holloway v. Magness*, 666 F.3d 1076, 1080 (8th Cir. 2012) ("The Constitution does not prohibit charging prisoners for essential prison services, at least in the absence of a showing that the result is a severe deprivation of a fundamental right"); *Register v. Helder*, 15-5052, 2015 WL 6123071, at *2 (W.D. Ark. July 30, 2015) ("A prisoner has no legal basis for demanding that he be offered commissary items tax-free"); *Amos v. Stolzer*, 1:14-CV-63 SNLJ, 2014 WL 6473596, at *9 (E.D. Mo. Nov. 18, 2014) (explaining that "[c]ommissary prices implicate no constitutional right," and that there is no legal basis for a prisoner to demand that commissary items not be taxed); and *Poole v. Stubblefield*, 4:05-CV-1005-TCM, 2005 WL 2290450, at *2 (E.D. Mo. Sept. 20, 2005) (stating that "[c]ommissary prices implicate no constitutional right," and that a plaintiff "certainly [has] no legal basis for demanding that he be offered commissary items tax free"). Therefore, these claims must be dismissed.

19

### iv. Hygiene

Liberally construed, plaintiff appears to be asserting an Eighth Amendment claim regarding the lack of adequate hygiene supplies. While his complaint focuses mainly on commissary pricing – which has no constitutional dimension – the attached exhibits assert a "shortage of basic [hygiene] items," and "[i]nsufficient supplies of items such as toothbrushes."

Pursuant to the Eighth Amendment, prisoners are entitled to the basic necessities of human life and to humane treatment. *Goff v. Menke*, 672 F.2d 702, 705 (8th Cir. 1982). Those necessities include personal hygiene items. *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (stating that prisoner's allegation he had been denied personal hygiene items stated a claim under 42 U.S.C. § 1983). *See also Scott v. Carpenter*, 24 F. App'x 645, 647 (8th Cir. 2001) (stating that basic personal hygiene is "within the minimal civilized measure of life's necessities to which a prisoner is entitled"). As such, the long-term, repeated deprivation of adequate hygiene supplies violates the Eighth Amendment rights of prison inmates. *Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir. 1996).

In this case, despite referring to a "shortage," plaintiff does not allege that he has actually been deprived of any hygiene items. For example, plaintiff repeatedly points to the price of a toothbrush, which he finds to be excessive. But he does not allege that he does not have a toothbrush, or that he is unable to procure one. Plaintiff does not identify any other specific items that are in short supply, or of which he has been deprived. An Eighth Amendment violation requires the long-term and repeated deprivation of the minimal civilized measure of life's necessities. Because he does not allege any facts to support such a deprivation, plaintiff has failed

to state a claim. Therefore, to the extent that plaintiff raises an inadequate hygiene claim, it must be dismissed.[5]

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Docket No. 5) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial partial filing fee of $39.31 within twenty-one (21) days of the date of this order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that an appeal from this order of dismissal would not be taken in good faith.

Dated this 4th day of October, 2022.

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

---

[5] In his exhibits, plaintiff appears to be making claims for other inmates, asserting that the commissary has failed "to make available all necessary [hygiene] provisions," which has created "a desperate need … for the offender population." Plaintiff lacks standing to bring claims on behalf of other prisoners. *See Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (stating that "[a] prisoner cannot bring claims on behalf of other prisoners"); and *Miner v. Brackney*, 719 F.2d 954, 956 (8th Cir. 1983) (explaining that plaintiff did not have "standing to assert" a constitutional claim on behalf of another person).